932 P.2d 881

STATE of Idaho, Plaintiff–Respondent,

v.

Judith Rita EVANS, Defendant–
Appellant.

No. 22594.

Supreme Court of Idaho,
Coeur d'Alene, October 1996 Term.

Jan. 30, 1997.

Rehearing Denied March 19, 1997.

John M. Adams, Kootenai County Public
Defender, J. Bradford Chapman, Deputy
Public Defender, for appellant. J. Bradford
Chapman argued.

Alan G. Lance, Attorney General, Boise, Brian D. Nicholas, Deputy Attorney General, for respondent. Brian D. Nicholas argued.

## McDEVITT, Chief Justice

The appellant, Judith Rita Evans (Evans), appeals from the Judgment and Sentence and Notice of Right to Appeal that was entered following a jury verdict finding Evans guilty of the crime of grand theft. Evans requests the Court reverse Evans's conviction for the crime of grand theft and remand the case to the district court.

## I.

## BACKGROUND AND FACTS

Giles Wardian (Wardian) hired Evans on May 10, 1994, to work in his video store, laundromat, and car wash. Evans's duties were to take care of people in the laundromat and car wash, (make change for people), and to rent videos from the video store. Evans was not authorized to access the coins in the laundromat machines except in situations when the amount of coins in the cash drawer was running low. If the amount of coins in the cash drawer was running low, Evans was authorized to access coins only from the Big Boy washers.

On a weekly basis Wardian's employees other than Evans recorded the number of cycles, the number of coins, and the amount of actual dollars collected from each top-load machine.[1] The weekly reconciliation sheets were used by Wardian at the end of each tax year for calculating taxes.

Wardian did not realize his laundromat business was losing money until two of Wardian's employees brought to his attention on September 1, 1994, that some money was missing. Prior to September 1, 1994, Wardian's record keeping employees did not realize that the ending number of cycles and coins were supposed to match the actual dollar amounts on the weekly reconciliation sheets. After Wardian realized his laundromat was losing money, Wardian reviewed all of the weekly reconciliation sheets for 1994 and dis-

covered a pattern of losses starting on May 14, 1994.

The pattern of losses in Wardian's laundromat business coincided with Evans's employment. Wardian contacted the Rathdrum police and had the police mark some coins with invisible ink. Wardian counted and placed the marked coins in the laundromat machines before Evans started her shift on September 2, 1994. Wardian set up a video surveillance camera in the laundromat where Wardian normally did not have a surveillance camera.

Evans started her shift at 4:00 p.m. on September 2, 1994. Wardian watched Evans remove coins from the laundromat machines on a monitor that was hooked up to the video surveillance camera located in the laundromat. Wardian testified that there was no reason for Evans to remove coins from the laundromat machines on the night of September 2, 1994, since there was an ample supply of quarters in the cash drawer.

After Evans left the laundromat at the end of her September 2, 1994 shift, Wardian placed Evans under citizen arrest. At the time of the citizen arrest, Evans had $70 worth of coins in her possession. Invisible ink was discovered on the coins that were in Evans's possession.

## II.

## PRIOR PROCEEDINGS

On September 20, 1994, a criminal complaint was filed against Evans, alleging Evans committed the crime of grand theft, a felony under I.C. §§ 18–2403(1) and 18–2407(1)(b). The criminal complaint alleged that on or about the months of May, June, July, August, and September 1994, Evans wrongfully took in excess of $300 from Wardian.

On November 15, 1994, Evans moved for a continuance of the November 15, 1994 preliminary hearing. Evans's request for a continuance was granted. On December 5, 1994, Evans requested a continuance of the De-

---

1. Only the top-load machines had cycle and coin counters. Therefore, the weekly reconciliation

statements only related to the top-load machines.

cember 5, 1994 preliminary hearing. Evans's request for a continuance was granted. On December 23, 1994, the preliminary hearing was held. Evans was bound over to the district court to answer the State's charge. On December 30, 1994, the Kootenai County prosecutor filed an information accusing Evans of the crime of grand theft. On January 23, 1995, Evans entered a plea of not guilty to the crime of grand theft.

On April 28, 1995, Evans filed a motion in limine to exclude the business records documenting Wardian's top-load machine revenue shortages. Evans alleged that Wardian prepared the business summaries after Evans was charged and that the summaries were highly speculative in their conclusions.

The hearing on Evans's motion in limine was scheduled on May 17, 1995. The hearing did not occur on May 17, 1995, based upon the fact that the preliminary hearing transcript was not completed. On May 31, 1995, Evans filed a motion to continue based upon the fact that the preliminary hearing transcript was not completed. On June 2, 1995, the court granted Evans's motion to continue.

On August 4, 1995, a pretrial conference was held. Evans's counsel requested the court continue the case, based upon Evans's counsel's representation that he "inherited" the case only two days prior to the pretrial conference.[2] The court denied Evans's counsel's request for a continuance, noting that the case against Evans was one year old.

On August 17, 1995, a jury trial regarding the grand theft charges against Evans took place. On August 18, 1995, the jury found Evans guilty of grand theft. On October 26, 1995, the district court entered a judgment and sentence. Evans appealed to the Idaho Supreme Court.

## III.

## THE DISTRICT COURT PROPERLY ADMITTED THE BUSINESS RECORDS

■ Evans argues that the district court abused its discretion by admitting the State's

exhibit 1, a weekly reconciliation sheet for the period ending August 7, 1994. Evans contends that record keeping employees who were responsible for creating the weekly reconciliation sheets, were not trained in the use or even aware of the proper procedures for balancing the amounts stated and thus, the weekly reconciliation sheets were not prepared in the ordinary course of business and should not have been admitted pursuant to I.R.E. 803(6).

■ The district court has within its broad discretion the decision of whether to admit hearsay under one of the exceptions to the hearsay rule. *Henderson v. Smith,* 128 Idaho 444, 450, 915 P.2d 6, 12 (1996). This Court will not overturn the district court's decision to admit business records absent a clear showing of abuse. *City of Idaho Falls v. Beco Constr. Co.,* 123 Idaho 516, 522, 850 P.2d 165, 171 (1993).

Evans does not challenge Wardian's testimony that employees who were responsible for producing the weekly reconciliation sheets understood how to record the number of cycles and coins indicated on the cycle counters and the actual amount of dollars taken from each top-load machine. Wardian testified that the weekly reconciliation sheets were created in the regular course of Wardian's laundromat business by Wardian's record keeping employees. Wardian was the custodian of the weekly reconciliation sheets.

During the August 17, 1995 trial, the State moved to admit exhibit 1 as a business document. Evans's counsel objected to the admission of exhibit 1 on the basis that the State failed to establish foundation. The district court admitted exhibit 1 under the business records exception to the hearsay rule, (I.R.E.803(6)), noting that Wardian identified exhibit 1 "as a regularly kept record of his business" and that Wardian was the custodian of exhibit 1.

Exhibit 1 was hearsay, an out of court statement made by someone other than the

---

**2.** The Kootenai County Public Defender's Office represented Evans throughout the proceedings in this case.

person testifying that was offered for the truth of the matter asserted. I.R.E. 801. Idaho Rule of Evidence 802 provides that "[h]earsay is not admissible except as provided by these rules...." Idaho Rule of Evidence 803 excludes certain hearsay from the hearsay rule. Idaho Rule of Evidence 803(6) states that "[t]he following are not excluded by the hearsay rule, even though the declarant is available as a witness," and goes on to state:

> Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

I.R.E. 803(6).

In *Large v. Cafferty Realty, Inc.*, 123 Idaho 676, 851 P.2d 972 (1993), this Court held that "I.R.E. 803(6) does not require a foundation of testimony by the person who prepared the document in order to admit the document as a business record." *Large*, 123 Idaho at 683, 851 P.2d at 979. The *Large* Court focused upon whether the custodian of the document had knowledge of the system used to make the record and not whether the custodian had personal knowledge of the actual contents of the record. *Id.; see also Henderson*, 128 Idaho at 450, 915 P.2d at 12.

In *Beco Corp. v. Roberts & Sons Constr. Co.*, 114 Idaho 704, 760 P.2d 1120 (1988) *overruled on other grounds by, Houghland Farms, Inc. v. Johnson*, 119 Idaho 72, 803 P.2d 978 (1990), this Court upheld the trial court's admission of an exhibit under I.R.E. 803(6). The *Beco* Court held that where "the evidence was produced in the ordinary course of business, at or near the time of occurrence and not in anticipation of trial" the evidence should be admitted as an exception to the hearsay rule. *Beco*, 114 Idaho at

711, 760 P.2d at 1127. In *Beco*, this Court noted that the exhibit at issue was a summation produced from daily time cards of individuals and from daily job activity sheets produced by an employee in the ordinary course of business and not in anticipation of trial. *Id.* The *Beco* Court analogized the facts in *Beco* to the facts in *Cheney v. Palos Verdes Inv. Corp.*, 104 Idaho 897, 665 P.2d 661 (1983). In *Cheney* this Court applied I.C. § 9–414, which is consistent with I.R.E. 803(6). *See Beco*, 114 Idaho at 711, 760 P.2d at 1127. In *Cheney* the exhibit at issue was a monthly summary of daily feed sheets for cattle. "It was regular procedure to determine at month end the total weight of potatoes and hay fed to defendants' cattle ..." and "[b]oth the daily feed sheets and the end of month summaries were prepared by the bookkeeper." *Cheney*, 104 Idaho at 900, 665 P.2d at 664. The *Cheney* Court upheld the trial court's admission of the business records based upon the Court's holding that "[t]he account records here were made in the ordinary course of plaintiffs' business and not in preparation for trial...." *Cheney*, 104 Idaho at 901, 665 P.2d at 665.

Exhibit 1 satisfies the requirements of I.R.E. 803(6). Wardian was the custodian of exhibit 1. Exhibit 1 was prepared by Wardian's record keeping employees in the regular course of business, at or near the time at issue, and was based upon Wardian's record keeping employees' personal knowledge. Exhibit 1 was not produced in anticipation of trial. The district court properly admitted exhibit 1 as an exception to the hearsay rule.

█ Evans argues that the district court abused its discretion by admitting the State's exhibit 2, a summary prepared by Wardian of all the 1994 weekly reconciliation sheets.

Evans's counsel did not object to the admission of exhibit 2. The State moved to admit exhibit 2 as a business summary of voluminous business documents pursuant to I.R.E. 1006. Evans's counsel conducted *voir dire*, asking Wardian if exhibit 2 was a summary of the weekly reconciliation sheets, such as exhibit 1. Wardian testified that exhibit 2 was a summary of the weekly reconciliation sheets. After establishing that exhibit 2 was predicated upon the reconcilia-

tion sheets, Evans's counsel did not object to the admission of exhibit 2 pursuant to I.R.E 1006.

In *State v. Fields,* 127 Idaho 904, 908 P.2d 1211, *cert. denied,* —— U.S. ——, 116 S.Ct. 319, 133 L.Ed.2d 221 (1995), this Court held that an alleged error raised for the first time on appeal will not be considered unless the alleged error is fundamental error. *Fields,* 127 Idaho at 911, 908 P.2d at 1218. In the present case Evans failed to raise at the district court level the issue of the admissibility of exhibit 2 pursuant to I.R.E. 1006. In *State v. McAway,* 127 Idaho 54, 896 P.2d 962 (1995), we recognized that a trial court's abuse of discretion in admitting evidence does not constitute fundamental error. *McAway,* 127 Idaho at 60–61, 896 P.2d at 968–69.

The district court's decision admitting exhibits 1 and 2 is affirmed.

## IV.

## THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY DENYING EVANS'S MOTION FOR A CONTINUANCE

■ During the August 4, 1995 pretrial conference, Evans's counsel requested the district court continue Evans's case based upon Evans's counsel's representation that he "inherited" the case only two days prior to the August 4, 1995 pretrial conference. The district court denied Evans's counsel's request for a continuance, noting that the case against Evans was one year old.

■ This Court has held that the decision to grant or deny a continuance rests within the sound discretion of the trial court. *State v. Tapia,* 127 Idaho 249, 255, 899 P.2d 959, 965 (1995); *State v. Ransom,* 124 Idaho 703, 706, 864 P.2d 149, 152 (1993). The appellant must show that the appellant's substantial rights have been prejudiced by reason of a denial of a motion for continuance. *State v. Laws,* 94 Idaho 200, 202, 485 P.2d 144, 146 (1971).

■ In determining whether the district court abused its discretion in denying a motion for continuance, this Court considers:

(1) whether the lower court rightly perceived the issue as one of discretion; (2) whether the court acted within the outer boundaries of such discretion and consistently with any legal standards applicable to specific choices; and (3) whether the court reached its decision by an exercise of reason.

*Ransom,* 124 Idaho at 706, 864 P.2d at 152.

Evans argues that a representation from defense counsel that defense counsel inherited the case two days before the pretrial conference on August 4, 1995, should present a compelling reason to continue. The State responds that there is nothing in the record that indicates why the original counsel, also from the Kootenai County Public Defender's Office, was not available for Evans's trial.

Evans has failed to carry her burden of showing the district court abused its discretion in denying Evans's motion for a continuance. The Kootenai County Public Defender's Office represented Evans throughout the proceedings in this case. On August 4, 1995, this case was almost one year old; Evans was citizen arrested on September 1, 1994, and a criminal complaint was filed against her on September 20, 1994. As of August 4, 1995, Evans's trial was set to begin on August 14, 1995. It was within the district court's discretion to determine a change of counsel two days before the pretrial conference, within the Kootenai County Public Defender's Office, was not a compelling reason to continue.

The district court reached its decision by an exercise of reason. The district court's decision to deny Evans's request for a continuance is affirmed.

## V.

## THE EVIDENCE ADDUCED AT TRIAL WAS SUFFICIENT TO SUSTAIN A CONVICTION FOR GRAND THEFT

■ Evans asks this Court to review the record in the present case and determine whether the evidence as to grand theft was substantial and competent so as to sustain the conviction of Evans.

A verdict will not be set aside where there is substantial evidence upon which a trier of fact could find the essential elements of the crime beyond a reasonable doubt. *State v. Filson,* 101 Idaho 381, 386, 613 P.2d 938, 943 (1980). In *State v. DeGrat,* 128 Idaho 352, 913 P.2d 568 (1996), this Court discussed its review of criminal convictions as follows:

When this Court reviews convictions in criminal cases, it gives

full consideration to the right of the jury to determine the credibility of witnesses, the weight to be afforded evidence, as well as the right to draw all justifiable inferences from the evidence before them. But, at the same time, judicial review requires that we peruse that evidence to determine whether a reasonable mind would conclude that the defendant's guilt as to each material element of the offense was proven beyond a reasonable doubt.

*State v. Erwin,* 98 Idaho 736, 740, 572 P.2d 170, 174 (1977). We will uphold a jury verdict if " 'there was substantial evidence from which a rational trier of facts could have found beyond a reasonable doubt that' the state proved the elements of the crime." *State v. Babb,* 125 Idaho 934, 943, 877 P.2d 905, 914 (1994) (quoting *State v. Filson,* 101 Idaho 381, 386, 613 P.2d 938, 943 (1980)).

*DeGrat,* 128 Idaho at 355, 913 P.2d at 571.

Evans argues that there were other employees who were present at the store that had access to the funds in question and therefore the evidence as to grand theft was totally circumstantial in nature. In *State v. Randles,* 117 Idaho 344, 787 P.2d 1152 (1990), we stated:

The function of an appellate court with regards to the facts of a case is to determine whether there was substantial and competent evidence supporting the verdict (citations omitted). To require the court at the appellate level to evaluate whether the evidence suggests any reasonable hypothesis which is consistent with the innocence of a defendant already convicted by a jury would be an impermissible usurpation of the role of the trier of fact. There-

fore, we hold that the language of the *Holder* instruction is to be applied only at the trial level, and is not an appellate standard of review.

*Randles,* 117 Idaho at 350, 787 P.2d at 1158.

There was substantial and competent evidence to support the jury's finding of guilt in the present case. We affirm the conviction for grand theft.

## VI.

## CONCLUSION

The judgment and sentence is affirmed.

JOHNSON, TROUT, SILAK and SCHROEDER, JJ., concur.