38 P.3d 1285

**STATE of Idaho, Plaintiff–Respondent,**

v.

**George L. TURNER, Defendant– Appellant.**

**No. 26713.**

Court of Appeals of Idaho.

Nov. 28, 2001.

Review Denied Feb. 5, 2002.

Randall D. Schulthies, Chief Bannock County Public Defender, Pocatello, for appellant. Randall D. Schulthies argued.

Hon. Alan G. Lance, Attorney General; Karen A. Hudelson, Deputy Attorney General, Boise, for respondent. Karen A. Hudelson argued.

PERRY, Judge.

George L. Turner appeals from his judgment of conviction and sentence for first degree murder. We affirm.

## I.

### FACTS AND PROCEDURE

In March 1998, the body of Danny Pratt was discovered off Michaud Creek Road in Power County. Subsequent investigation revealed that Pratt was shot to death by Turner in the early part of February 1998 in Turner's apartment.

Turner was charged with first degree murder. I.C. § 18–4003. At Turner's jury trial, a man present when the shooting occurred testified that, in his opinion, the shooting was accidental. The next day, however, the district court granted the state's motion to strike the witness's testimony. At the conclusion of the trial, the district court denied

Turner's requested jury instruction on self-defense, finding that there was insufficient evidence supporting a self-defense instruction. The jury found Turner guilty of first degree murder.

After trial, Turner contacted members of the jury through an investigator and discovered that some of the jurors considered Turner's failure to testify during the jury's deliberations. Turner filed a motion for a new trial pursuant to I.C.R. 34 along with an affidavit of the investigator relating what some of the jurors had told the investigator. The district court denied Turner's motion. The district court sentenced Turner to a unified term of life in prison, with a minimum period of confinement of thirty years.

Turner appeals, raising four issues: (1) whether the district court abused its discretion by granting the state's motion to strike the witness's testimony that the shooting of Pratt was accidental; (2) whether the district court erred by denying Turner's requested jury instruction on self-defense; (3) whether the district court abused its discretion by denying his motion for new trial based on juror misconduct; and (4) whether the district court abused its discretion by sentencing Turner to a unified term of life in prison, with a minimum period of confinement of thirty years.

## II.

### ANALYSIS

### A. Striking of Witness's Testimony

■ One of the witnesses present in Turner's apartment when Pratt was shot testified that, prior to the shooting, Pratt and Turner argued over Pratt allegedly owing Turner money. The argument escalated and Pratt called Turner a "fucking liar." Turner, a paraplegic, traveled in his wheelchair to his bedroom where the witness saw Turner assemble a gun. Turner came out of his bedroom and paused in the hallway for a few seconds to load the gun. Turner returned to the living room, pointed the .22 caliber gun directly at Pratt, who was sitting only a few feet away on a couch, and said, "Now who you calling a fucking liar?" The witness testified he then put his head down and

heard Pratt say something like, "You better get me before I get you." The witness testified that he saw movement out of the corner of his eye, as if Pratt were attempting to get up off the couch, and then heard the gun discharge. When the witness looked up, he saw Turner holding the gun and Pratt slumped back on the couch with a gunshot wound to the head. The witness testified that another man who was present asked Turner why he shot Pratt and that Turner replied, "I panicked, I thought he was going to get me."

On cross-examination, counsel for Turner asked the witness whether he thought the shooting was an accident. The witness stated he believed the shooting was an accident because it was a panic situation and because of Turner's statement that he panicked. When the witness was asked whether he agreed with Turner's statement, the state objected on the ground that the witness's answer called for a legal conclusion. The district court overruled the state's objection. However, the next day, the district court granted the state's motion to strike the witness's testimony that the shooting was accidental. On appeal, Turner claims that the district court erred by striking the witness's testimony because it was permissible lay opinion testimony.

■ The trial court has broad discretion in determining the admissibility of testimonial evidence. A decision to admit or deny such evidence will not be disturbed on appeal absent a clear showing of abuse of that discretion. *State v. Smith*, 117 Idaho 225, 232, 786 P.2d 1127, 1134 (1990). Under I.R.E. 701, a trial court may allow a lay witness to state an opinion about a matter of fact within his or her knowledge, so long as two conditions are met. First, the witness's opinion must be based on his or her perception; and second, the opinion must be helpful to a clear understanding of the witness's testimony or a determination of a fact in issue. *State v. Enyeart*, 123 Idaho 452, 454, 849 P.2d 125, 127 (Ct.App.1993). However, lay opinions are subject to the restriction that when the question is one which can be decided by persons of ordinary experience and knowl-

edge, it is for the trier of fact to decide. *State v. Pugsley,* 128 Idaho 168, 175, 911 P.2d 761, 768 (Ct.App.1995).

Here, the only portion of the witness's testimony that was stricken by the district court was the witness's opinion that the shooting was an accident. At the conclusion of the trial, the district court gave the following instruction relating to its decision to strike the witness's testimony:

> I have determined that certain opinion testimony of [the witness] which was presented to you should not have been admitted into evidence, and thus I have granted a motion to strike that testimony from the record.
>
> [The witness] was asked his opinion whether the killing was an accident. His conclusions or opinions on that issue are not relevant to your deliberations and are not evidence. Any references to the witness's conclusions on that issue have been stricken from the record.
>
> "The Jury may evaluate the admissible testimony of the witness and draw its own conclusions."

The facts and circumstances, as testified to by the witness, surrounding the shooting were not stricken from the record and were adequately presented to the jury such that the jurors, with their individual common experience and knowledge, could form their own opinions and draw their own conclusions about whether the shooting was an accident. Turner has failed to show error with the district court's decision to strike the witness's opinion that the shooting was an accident.[1] The witness's opinion in that regard was not helpful to a clear understanding of the witness's testimony nor was it helpful to a determination of a fact in issue. Furthermore, the witness's opinion that the shooting was an accident amounted to inadmissible speculation as to Turner's state of mind. *See State v. Parks,* 71 Or.App. 630, 693 P.2d 657, 659–60 (1985) (witness's testimony that defendant's shooting of the victim was an accident was inadmissible lay opinion testimony). We conclude, as did the district court, that

the witness's testimony regarding the accidental nature of the shooting was not proper opinion testimony. Therefore, the district court did not abuse its discretion by striking that portion of the witness's testimony.

## B. Requested Self–Defense Instruction

The district court refused Turner's requested self-defense instruction after determining that there was no basis in the evidence for such an instruction. On appeal, Turner claims that there was sufficient evidence presented at trial to justify a self-defense instruction.

 The question whether the jury has been properly instructed is a question of law over which we exercise free review. *State v. Gleason,* 123 Idaho 62, 65, 844 P.2d 691, 694 (1992). The trial court is required to charge the jurors with all matters necessary for their information so that the jury may be correctly informed with respect to the nature and elements of the crime charged and any essential legal principles applicable to the evidence admitted. *State v. Kodesh,* 122 Idaho 756, 758, 838 P.2d 885, 887 (Ct.App.1992). A defendant is entitled to have the jury instructed on every defense or theory of defense having any support in the evidence. *State v. Hansen,* 133 Idaho 323, 328, 986 P.2d 346, 351 (Ct.App.1999). This includes the law of self-defense. *Id.* The law governing the issue of self-defense in a homicide case is found in I.C. § 18–4009, which states in relevant part:

> Homicide is also justifiable when committed by any person in either of the following cases:
>
> . . . .
>
> (3) When committed in the lawful defense of such person ... when there is reasonable ground to apprehend a design to commit a felony or to do some great bodily injury, and imminent danger of such design being accomplished; but such person, or the person in whose behalf the defense was made, if he was the assailant or engaged in mortal combat, must really

---

1. The district court further explained that Turner was not foreclosed from arguing an accidental killing based upon the witness's testimony, only

that the argument could not be based on the witness's opinion.

and in good faith have endeavored to decline any further struggle before the homicide was committed. . . .

 In addition to the defendant's perception of the situation, there must be circumstances sufficient to excite the fears of a reasonable person. *State v. Rodriguez*, 93 Idaho 286, 291, 460 P.2d 711, 716 (1969). The defendant's fear alone is not a legally sufficient reason upon which to base an inference that the defendant acted in self-defense. *Id.*

 Here, two witnesses present when the shooting took place testified at trial. Their testimony demonstrated that after Pratt entered Turner's apartment, Pratt and Turner began arguing about Pratt owing Turner money. Shortly thereafter, one of the witnesses also began arguing with Pratt, and he and Pratt began fighting. Turner hit Pratt on the shoulder two times with a hammer, attempting to break up the fight. When Pratt and the witness stopped fighting, Pratt sat down on the couch and began arguing with Turner. When Pratt called Turner a "fucking liar," Turner went into his bedroom, assembled a gun, paused to load it, and pointed it directly at Pratt. Turner then asked, "Now who you calling a fucking liar." Pratt said something to the effect of, "You better get me before I get you." The other witness, whose head was down, saw movement from the couch and heard the gun discharge. That witness testified that, although he saw movement like Pratt was getting up off the couch, he did not see Pratt get up and go after Turner. The witness who fought with Pratt prior to the shooting testified that he was lying on the floor trying to catch his breath and that he was unaware of what was happening until he heard the gun discharge. Like the other witness, this witness testified that he did not see Pratt go after Turner nor did he ever see Pratt strike Turner.

In refusing to give Turner's requested self-defense instruction, the district court reviewed the evidence and determined that it did not support a self-defense instruction. The district court stated:

The evidence, as I review it in the record, shows that the defendant, Mr. Turner, then proceeded into his bedroom, assembled the gun, returned with the statement, see, now who you calling a liar, or words to that effect. If I evaluate that testimony, I see no basis for the claim of self-defense under those circumstances.

Now, though I will not instruct on the issue of self-defense, I will instruct on the issue of involuntary manslaughter. I do believe that the evidence demonstrated there could support a verdict of involuntary manslaughter.

In addition to instructing the jury on first degree murder, the district court also instructed the jury on second degree murder, voluntary manslaughter, and involuntary manslaughter as lesser included offenses that Turner could possibly be found guilty of by the jury. The jury found Turner guilty of first degree murder, which required a finding by the jury that Turner killed Pratt with premeditation and malice aforethought.

After reviewing the record, we uphold the district court's conclusion that the evidence did not support a self-defense instruction. At most, Turner demonstrated that Pratt was attempting to get up from the couch. Even assuming that Turner's statement that he thought Pratt was going to get him was true, that alone did not create an objectively reasonable belief that Pratt was about to do great bodily harm to Turner. Turner may have subjectively believed he was in imminent danger of great bodily harm due to Pratt's comment, "You better get me before I get you," and Pratt's physical confrontation with one of the witnesses. However, Turner failed to demonstrate that his subjective belief was objectively reasonable based on the testimony of mere movement by Pratt from the couch.

 In addition, Turner provoked Pratt's response. No evidence was presented that indicated Pratt was armed or that he engaged in any physical confrontation with Turner prior to the shooting. Turner pointed a .22 caliber weapon directly at Pratt merely because Pratt called Turner a liar. A person is not entitled to claim self-defense or justify a homicide when he or she was the aggressor or the one who provoked the altercation in

which another person is killed, unless such person in good faith first withdraws from further aggressive action. *See State v. Owen,* 73 Idaho 394, 413–14, 253 P.2d 203, 213–14 (1953), *overruled on other grounds by State v. Shepherd,* 94 Idaho 227, 486 P.2d 82 (1971); *State v. Wilson,* 26 Wash.2d 468, 174 P.2d 553, 561 (1946). This is the principle embodied in I.C. § 18–4009(3). Turner had a good faith obligation to retreat from any confrontation with Pratt before resorting to deadly force. Turner presented no reasonable view of the evidence which justified killing Pratt and, therefore, Turner was not entitled to a self-defense instruction. Accordingly, we conclude that the district court did not err by refusing to give such an instruction.

## C. Juror Misconduct

After Turner was found guilty, Turner contacted several members of the jury through an investigator and discovered that some of them considered Turner's failure to testify in reaching their verdict. The district court denied Turner's motion for a new trial citing the juror privilege embodied in Idaho Rule of Evidence 606(b). On appeal, Turner urges this Court to declare Rule 606(b) unconstitutional and overturn the Idaho Supreme Court's decision in *State v. DeGrat,* 128 Idaho 352, 913 P.2d 568 (1996).

 A decision on a motion for new trial is reviewed under an abuse of discretion standard. *State v. Egersdorf,* 126 Idaho 684, 687, 889 P.2d 118, 121 (Ct.App.1995). Whether a district court properly applies a statutory provision to the facts of a particular case is a question of law over which we exercise free review. *State v. Horn,* 124 Idaho 849, 850, 865 P.2d 176, 177 (Ct.App. 1993). Under Rule 606(b), there are certain matters a juror may not testify about when there is a challenge to the validity of a verdict. A juror may not testify about any matter or statement occurring during the course of the jury's deliberation. A juror cannot testify about the effect of anything upon that juror's or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or concerning the juror's mental processes in connection there-

with. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for the purpose of inquiring into the validity of a verdict. A juror may only testify about whether extraneous prejudicial information was improperly brought to bear upon any juror and whether the jury determined any issue by resort to chance.

In *DeGrat,* the Idaho Supreme Court addressed the issue of whether a juror could impeach a guilty verdict by testifying or submitting an affidavit stating that the jury considered the defendant's failure to testify at trial in its deliberations. *DeGrat,* 128 Idaho at 354, 913 P.2d at 570. The defendant there challenged the constitutionality of I.R.E. 606(b), claiming that it violated his constitutional right under the Fifth Amendment not to be compelled to be a witness against himself. The Court held that the trial court's jury instruction not to consider the defendant's failure to testify was sufficient to protect the defendant's constitutional privilege not to testify.

Here, Turner supported his motion for a new trial with an affidavit from the investigator who contacted the jurors. The affidavit contained hearsay statements from the jurors concerning their consideration of Turner's failure to testify at trial. Even if Turner supported his motion with affidavits from the jurors themselves, such affidavits were inadmissible to impeach the jury's guilty verdict under Rule 606(b) and the decision in *DeGrat.* On appeal, Turner presents no new basis upon which to reconsider the constitutionality of Rule 606(b) and merely reiterates the same argument addressed and rejected in *DeGrat.* Based on the Idaho Supreme Court's previous decision on this question, and being presented with no new basis upon which to consider the issue, we must adhere to the law as expressed in *DeGrat.* Therefore, we conclude the district court did not err by denying Turner's motion for a new trial.

## D. Sentence Review

Turner was sentenced to a unified term of life in prison, with a minimum period of

confinement of thirty years. On appeal, Turner claims the district court abused its discretion because it failed to consider rehabilitation for Turner.

An appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett,* 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct.App.2000). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable, and thus a clear abuse of discretion. *State v. Brown,* 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice,* 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *State v. Toohill,* 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App.1982). A sentence need not, however, achieve all of these goals. *State v. Thomas,* 133 Idaho 682, 688, 991 P.2d 870, 876 (Ct. App.1999). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender and the protection of the public interest. *State v. Reinke,* 103 Idaho 771, 772, 653 P.2d 1183, 1185 (Ct.App.1982).

Here, the district court fashioned Turner's sentence taking into account several factors. The district court was aware of Turner's poor health and used it as a basis for not following the state's recommendation of a fixed life sentence. The district court also recognized that there was a twelve-year period, from 1985 to 1997, during which Turner did not have any involvement with the law. However, as the district court noted, Turner had an extensive criminal history containing numerous crimes of violence, many involving guns. Turner's psychological evaluations indicated that he had exhibited paranoia and anti-social tendencies since he was a teenager. After considering the nature of the crime, the district court determined that a lengthy period of incarceration was necessary in this case to adequately protect society. Having reviewed the record in this case, we cannot say that the district court abused its discretion. Therefore, Turner's sentence of a unified term of life in prison, with a minimum period of confinement of thirty years, is not unreasonable or excessive.

## III.

## CONCLUSION

We conclude that the witness's testimony that the shooting of Pratt was accidental was impermissible lay opinion testimony and, therefore, the district court did not abuse its discretion by striking it. Turner was not entitled to a jury instruction on self-defense because Turner did not present evidence supporting such an instruction. Therefore, we hold that the district court did not err by denying Turner's requested jury instruction. Because Turner was precluded by I.R.E. 606(b) from offering the jurors' statements that they considered Turner's failure to testify at trial during their deliberations, we conclude that the district court did not abuse its discretion by denying Turner's motion for a new trial. Finally, having reviewed the record in this case, we cannot say that Turner's sentence was unreasonable or excessive, and we hold that the district court did not abuse its discretion in fashioning Turner's sentence. For these reasons, Turner's judgment of conviction and sentence are affirmed.

Chief Judge SCHWARTZMAN and Judge LANSING, CONCUR.